Good morning, Your Honors. Christine Weber on behalf of Plaintiff Appellant Abel Cantaro Castillo, and I'd like to reserve five of my 15 minutes for rebuttal. Plaintiff asserted two independent bases for jurisdiction over his claim on behalf of himself and the class, CAFA and Federal Question. I understand the Court has a question it would like us to address about whether Federal Question jurisdiction was preserved for appeal, but I'd like to first address the statute of limitations, establish that a six-year statute of limitations applied to the contract law claim, which simplifies resolution of the amount at issue for CAFA and establishes jurisdiction clearly. Second, to show that even under a two-year statute of limitations, all CAFA requirements are met, and once again the Court had jurisdiction. And third, of course, to address this Court's question about preservation of the Federal Question jurisdiction argument as Federal Question provided the alternative basis for jurisdiction in the district court. This Court in Rivera v. Perry v. Sons clearly addressed exactly the issue presented here with respect to the statute of limitations. Like this case, Rivera was a case involving H-2A visas and the contract that is created under an H — under the H-2A visa program. The plaintiffs there on behalf of themselves and the class asserted contract law claims under Nevada State law, asserted violations of the Nevada minimum wage amendment, and also asserted FLSA claims. Could you help me with the question whether there was a contract between WRA and Mr. Cantaro, your client? I saw there was a job order, but then there were contracts that from — under the regulations seemed to supersede them, and the contracts were not with WRA. So help me understand the nature, your argument about a contract between Cantaro, Castillo, and WRA. Certainly, Your Honor. WRA submitted the job certifications to the Department of Labor for bringing in Mr. Cantaro, Castillo, and other shepherds to Nevada. WRA acted as a joint employer with the various ranches that are members of the WRA, and under the H-2A visa regulations, the contract continues to exist between Did they enter into a contract? Because there were contracts in the record, but I didn't see WRA as a party to any of those contracts. One of the former parties, El Tejon, submitted the contracts that it executed with the plaintiff, but under the H-2A visa regulations, a contract is created by the job order, by the job certification. And that's the regulations I looked at said in the absence of a work contract, then the job order, the terms of the job order are in the contract. Is there something else that says when there is a contract, the job order remains a separate contract? I didn't see that in the regulations. Yes. Well, first of all, of course, the contract, because there can be joint employers, and WRA is a joint employer in this circumstance. Well, a joint employer doesn't necessarily mean you have a contract. I mean, you can be a joint employer and have no contract at all with someone. Precisely, Your Honor, but my point being that under the H-2A visa regulations, there is a contract with, and it's by operation of regulations with WRA. Can you point me? Maybe you can point me to that. Because I, in the regulations, I apologize, Your Honor, I will have to check the specific site on that, because that had actually not been contested at any point in the proceedings to date, and so I don't have a citation to that with me. I can certainly be happy to submit. I'll try and do that during my rebuttal time, if I can check the regulations while opposing counsel is arguing. But your theory, just so that I understand it, is that the regulations create a contract, and your theory on breach of contract was that the employer agreed to abide by regulations, which would include the minimum wage. Correct. And is that formed, is that based on the regulatory implication of a contract or an actual contract? The H-2A regulations state that this will act as a contract and specify what contract terms must be included. So that says the highest of, it doesn't say minimum wage. It says the highest of, I think it was AEWR or Federal or State minimum wage, whichever is higher. Is that right? Correct. That's absolutely correct. Is there something in the record telling us which is higher here? Yes. There was no dispute that Nevada having an $8.25 per hour minimum wage was higher. Well, there was an argument about how many hours were worked. So 8.25 for 8 hours a day, is that higher than the AEWR? Is that in the record? Yes. You can actually just do the math and it is higher. And I would say, Your Honor, that even at 8 hours a day, that's 56 hours a week. And at 56 hours a week with the Nevada minimum wage, we establish that there's more than $5 million in damages at issue. That's if there's 6, because I thought there was an argument that it was only 6 months a year. That was a clear mistake made by the district judge. We specifically stated that we were including in our calculation only the Nevada certifications for those who were in Nevada year-round. The individuals who were certified for California and only spent half the year in Nevada, we excluded from our calculation entirely. So I thought Mr. Contaro Castillo himself was only 6 months in Nevada. Correct. Is that right? We did the calculation on behalf of the class, and we did it in a conservative manner, which looked only at those who were in Nevada year-round, and therefore understated the total damages at issue. Were there 100 shepherds who were in Nevada year-round, all year? Yes. There were actually — Where is that in the record? And that comes from the Department of Labor records of the certifications that were submitted by WRA, and we gave the citation to the government website from which we extracted those records, and the district court found, and this is excerpts of record at page 8, that each year within the 2-year statute of limitations, there were 100 or more. I saw that, but I didn't see where he said, and they were 12 months in Nevada. There was no evidence in the record of any Nevada shepherd ever leaving the State of Nevada. The Tejon declarations, they all indicated 6 months here, 6 months there, traveling with shepherd, with the sheep. Correct. Tejon shepherds were certified for California, and that's why we didn't include them in our calculation. But they were spending 6 months in Nevada, so is there an inference that shepherds that are certified for Nevada are spending 6 months in California? Your Honor, there has to be some evidence in the record. Well, you have the, as a plaintiff, you have the burden of proving by preponderance. Do you have evidence that they were 12 months, that all 100 of them were 12 months in Nevada, or if so, where is that? There has not been any discovery, Your Honor, so there has not been evidence of that yet. But if I may, under Guglielmino, we first can make a good-faith allegation, and then if there is factual evidence to dispute that allegation, we have to obviously meet that evidence. However, there has been no evidence put forward, and nobody even argued that Nevada certified shepherds were spending their time in any other State. So in terms of what is now one way or the other, there is no evidence either way. Correct. There has been no evidence submitted that would support such a finding. Okay. Did the district court make factual determinations about that when he made credibility determinations about your allegations? The district court did not consider the possibility of Nevada shepherds working outside of Nevada. He did express concern that we had included California shepherds who were only working half the year. In fact, as we specified in footnotes 2 to 3 of our Second Amendment complaint, we specifically excluded those from our calculation in order to avoid making any sort of overcount. And so really what most of the parties focused on and what the district court mostly focused on below was the dispute of fact as between our claim based on the job order and the job duty specified therein that the shepherds were working 24 hours a day, and the argument from the El Tejon declarations that they were only working 8 hours a day. The Court doesn't need to resolve that issue because at 8 hours a day, 56 hours a week, we've shown that that yields over $5 million in damages nonetheless. And that's without even including not only those California shepherds, but it's without including the claims under Nevada State law for not paying discharged employees. Their full wage is due within 30 days of termination. And just to clarify, that's for 12 months, correct? Yes, Your Honor. And the record, the El Tejon declarations show, the declaration, only declarations in the record actually show that those shepherds are working 12 months a year. We also did not include in our calculation the contract claim damages for unreimbursed expenses for travel and visa costs incurred in entering into the H-2A visa program, which the regulations require the employer to reimburse. And we also did not include attorney's fees, which, because we also have parallel claims under the Nevada Minimum Wage Act, which has fee-shifting provision, would also add to our damages. So when you consider the entirety of the record, including the undisputed facts, it's clear that we reach over $5 million in damages and therefore establish CAFA jurisdiction. And under the six-year statute of limitation, which this Court's decision in Rivera State applies, there's really been no dispute that under a six-year statute, CAFA jurisdiction is satisfied. The district court itself only expressed concern because of finding that a two-year statute was appropriate, and therefore started us down the path of doing a more precise calculation for the two years. But for six years, it was just never an issue. So in Rivera, the comments about the two-year versus six-year statute of limitations were made in a footnote, indicating that, and the panel indicated it didn't know whether or not the district court had in fact applied the two-year limitation. So then subsequently, the Nevada Supreme Court issued its decision in Perry, which talked about the constitutional provision. It didn't address this specific issue, but do you think that Perry might change the analysis of Rivera? No, Your Honor, because even at the time of Rivera, it was known that the statute of limitations for the Nevada Minimum Wage Act was not the six-year contract provision. And what the Court in Rivera found was that, and I will say every single Federal court we have found that addressed H-2A contract claims and parallel State wage and hour exclusion, which is the State wage and hour statute of limitations applies to the wage and hour claims under statute, and the contract statute of limitations applies under for your contract claim. And that's not only what Rivera said as to the contract claim there, but also what the Eighth Circuit said in Cuellar-Aguilar and what Ojeda-Sanchez and Perez-Benitez also said, and again, from outside the Ninth Circuit, but there's just a consensus. We have not found a single H-2A contract claim in which a Federal court said we're going to apply a State wage and hour statute of limitations rather than the contract statute of limitations. Okay. You're down to about two and a half minutes. Do you want to get to the Federal question jurisdiction? Oh, yes. Let me address that. And, Your Honors, the second amended complaint presented by a plaintiff, just like the first amended complaint, presented Federal question jurisdiction. All of the allegations about the controlling and central importance of the H-2A regulations in establishing the contract and establishing the terms of that contract are laid out exactly the same way in the second amended complaint as in the first amended complaint. We didn't eliminate any of our claims. And your brief, you said one of the questions was whether the job order under which Quintaro worked for WRA created a contractual relationship, suggesting you're not sure of it. You're now telling me you're sure of it? Oh, we've always been sure of it, but it is something that we're required. But it's a Federal question? Correct, Your Honor. We're required to establish that as part of proving the existence of our contract. We're sure that we should prevail, but the defendant has actually disputed this question. So under the ---- So it's not in the regulations or it is in the regulations? It is in the regulations. It is in the regulations. Okay. You're going to get back to me with that. But under Gunn and Grable, where the issue is necessarily raised, as it is here, and where it is actually disputed, and if you look in the record, excerpts of record at 657 to 58 and 316 to 318, WRA has plainly disputed the existence of the contract and whether the contract required payment of the statement of a wage. But you have to show the contract. Do you have to show the contract by preponderance of the evidence in order to get the 6-year statute of limitations? We have to show we have to show that we're raising a we've stated a claim under the contract, State contract claim, in order to assert a 6-year statute of limitations. We would have to prove the contract to ultimately prevail on the merits. So getting back to the Second Amendment complaint, you did not allege Federal question jurisdiction specifically true? We didn't use that term, but as this Court decided in K2 American Corp., what matters is whether the complaint on its face raises a Federal question and not whether a specific statute is cited. And indeed, the Court in that case considered bases of Federal jurisdiction that had never been set forth in the complaint and said that that was appropriate, and that is the way courts traditionally look at jurisdictional issues. If you look at what Gunn and Gere will require for raising a Federal question, all of the allegations in the complaint that meet those requirements are set forth in the Second Amended complaint. Robertson, Thank you. Good morning, Your Honors. Ellen Winograd, representing Western Range Association. I think that I completely agree that the Second Amended complaint supersedes the first. If you wish for me to speak about Federal question jurisdiction, I will. I'm happy to do that. I want to clarify a couple of things, a couple of questions that my counsel was not able to answer. First of all, the question came whether, in fact, there was anything in the record that indicated that the El Tijon plaintiff, in particular Abel Cattaro Castillo, worked half the year in California and half in Nevada. And, in fact, that was in plaintiff's amended complaint. It was in plaintiff's Second Amended complaint. It was in the original complaint. Well, they say even without Cattaro Castillo, there is 100 shepherds who worked 12 months in Nevada, and that's undisputed. That is not what is undisputed, and that is also not what occurred. What occurred was that there were labor certifications for 100 or more. The undisputed evidence is that the plaintiffs, or in this case the appellants, numbers were off. Is there any evidence that the 100 shepherds who worked for WRA or who had job orders from WRA worked only 6 months? Is there any evidence in the record that they worked only 6 months in Nevada? No, and as was pointed out, it is absolutely the plaintiff's burden to show that to invoke Federal court jurisdiction. So you're saying there's no evidence either way? There is. The evidence, in fact, that was found was on the 6 undisputed El Tijon affidavits. Those affidavits showed undisputedly that they worked 6 months approximately, half their time in Nevada, approximately half their time in California. But they were certified. Opposing counsel says they were certified in California, whereas they're arguing about shepherds who were certified in Nevada. They were certified in there are certifications, job certifications for Nevada. Now, a job certification does not mean that somebody works in Nevada. It often works that way, but not exclusively. And the reason is the job certification is clearly applied for. It's a different agency, and it occurs approximately 3 months before. It's a projection, how much El Tijon thinks it's going to need in terms of H-2A workers. And so the job certification is obtained. It may never be filled, and there is nothing in the record to show that any of the herders that the plaintiffs are attempting to make into this class were ever employed in the state of Nevada at all, let alone half the time. But their allegations in the complaint, taking them as true for purposes of this hearing, the allegations indicate that they worked approximately half the time in Nevada for El Tijon. And that's Abel Cantaro Castillo. And yet, we don't have any declaration from him. We don't have any declaration or evidence from any herder, except the six from El Tijon. Why aren't the Department of Labor certifications reliable? And if your argument is correct, isn't that an issue later for class certification? They are reliable in the number of class certifications that are issued. But there are a number of reasons why a class certification can be obtained and never used. And that would mean that it's obtained, but it doesn't necessarily represent a herder in the state of Nevada. For example, it's obtained for an entire year, but that herder does not stay in the state of Nevada for an entire year. In fact, that is plaintiff's own allegation in this case. There is another reason, and that is that you may obtain labor certifications and due to fires, pestilence, any of the things that can affect Mother Nature, you don't need that many herders. There is not evidence in this case as to how many herders were in Nevada. There's simply evidence as to how many labor certifications were obtained for the state of Nevada. So that's why it's- Yeah, I'm not following the argument why that's not adequate in terms of the allegations in the complaint. I understand you may contest that if there ever got to the point of a class certification, but why isn't it enough now? Because it is uncontested right now that the numbers that were utilized to obtain or to attempt to obtain CAFA jurisdiction were off. And therefore, the labor certifications, as noted by Judge Jones below, are simply indications of how many Department of Labor and USCIS labor certifications were issued, not used. Now, if every labor certification applied to a herder in the state and there's no evidence whatsoever in the record as to that, then you would be exactly right. But the case is that there are labor certifications. They are issued and they may or may not, and it's not a factual question because the plaintiffs themselves have submitted no evidence whatsoever. All they have is allegations. So getting back to the question of whether there's a contract between WRA and the workers, the shepherds, they issued job orders and then the contracts in the record are from, I guess, El Tejon and some others. So do you agree, disagree that there's a contract with WRA for purposes of their breach of contract argument? I disagree to the extent that there is absolutely no evidence in the record. As you yourself pointed out, a joint employer is not necessarily a contractual employer. In this case, Abel Cantaro Castillo was employed by the El Tejon Ranch. And so there is no evidence in the record that there is contractual privity or any other privity between Western Range Association and Abel Cantaro Castillo. So they argue the regulations, by the end of the regulations, a contract exists. By virtue of the regulations, the H-2A regulations do not rise to the level of a tariff, which would, for example, be a contract. The H-2A regulations, which in fact were revised completely in November of 2015, which sort of straddles this case. Those provide the guidelines. They do not provide a contract. They are not a contract. And most significantly, they do not provide a private cause of action. That is why the two-year statute of limitations under the minimum wage amendment, as alleged by the appellants in this case, is what would govern this particular action, not a six-year contractual statute of limitations. Perhaps we'd be having a different conversation if there were a contract that we were looking at between El Tejon and Plaintiff Abel Cantaro Castillo. But not only was that contract never put into the record, that contract is no longer before this court. We're talking about Western Range Association. So I'm happy to talk about the two-year statute of limitations. I think that the reliance on the Rivera case is absolutely misplaced for two reasons. Number one, the Rivera case was in 2013. It was the Perry, and they're both Perry, P-E-R-I and P-E-R-R-Y. So the Rivera case, Rivera versus Perry, was a ranch case involving onions. Now, onions aren't sheep. What's the difference? Why would it matter? The difference is that sheep are on the range. Sheep, what we're talking about, are range herders. And it's a different animal altogether.  But most significantly, this case is being --. Roberts, in terms of what statute of limitation applies. Two years. No, why does the fact of who the plaintiff is make any difference as to the length of the statute of limitations that it applies? Because in this particular case, because who the plaintiff was, the plaintiffs had control of their pleadings. And the second amended complaint alleged causes of action under the minimum wage amendment. Nevada's minimum wage amendment. Right, but they also asserted a breach of contract theory as the plaintiffs did in the Rivera case. I mean, I agree with you on the minimum wage and the constitutional claims. But as to the breach of contract claims, why doesn't Rivera tend to indicate that a six year statute applies? Because the Nevada Supreme Court in Perry specifically stated that when you are attempting to recover unpaid wages based upon the failure to pay the Nevada minimum wage. Under the Constitution. Pardon? Under the Nevada Constitution. Yes, absolutely. It didn't deal with this question, did it? The second Perry case. The second Perry case was also based upon a contract, although the issue there was whether it was a two year statute of limitations or a four year, three year, four year statute of limitations based upon fraud. However, the entire field of the minimum wage and whether the accurate wages were paid was addressed by the Perry v. Terrible Herbst case in the sense that if the gravamen of the action is the failure to pay wages, whether you call it a breach of contract action, whether you call it a tort action, whatever you call it, the two year statute of limitations applies to claims applicable to Mr. Cantaro-Castillo's contract wage for unpaid minimum wages. And that is what the court below found accurately, and that is what the Perry v. Terrible Herbst case says as well. At most, however, at most, six year statute of limitations, two year statute of limitations, there is still no evidence that in fact there was anything being paid that was less than what was required under the AWERS, what was required under the minimum wage amendment, whether you're looking at state law, whether you're looking at the regs, whether you're looking at the statutes. There is still no evidence. And because it is the plaintiffs attempting to invoke the jurisdiction under the CAFA, they bear the burden, and they simply have failed to do so. In fact, the undisputed evidence is that they cannot meet that burden, whether it's two years or whether it's six years. It is not a factual question, it is a legal question because based upon their own math, their own allegations, and the way they have presented this case and chosen to bring this Nevada case in a Nevada court under the Nevada minimum wage amendment. They have controlled exactly where we're going, and where we are going is number one, a two year statute of limitations, and number two, no CAFA jurisdiction, period. Because under CAFA, that's a math problem. Do they have 100 plaintiffs, putative plaintiffs? And the answer is they have not proven that. In fact, it is undisputed that they have not proven it. I thought the district court said there were 100 Jeopards working for WRA. It did not. It found that there were in excess of 100 labor certifications issued. And by footnote to the district court's decision, the district court said these are statistics, and statistics are not evidence. And it is the plaintiff's burden to assert facts and evidence to invoke CAFA jurisdiction. Plaintiff has not done so in this case. I'm just going to end it. I see my time is almost up, unless there are other questions, of course. In this particular matter, it's about burden of proof. It's about the legal standard that is required to be applied to invoke CAFA jurisdiction. And it is about plaintiffs choosing for reasons I cannot explain, and I'm not going to speculate, to bring this in Federal court when it is, in fact, based on the Nevada Minimum Wage Amendment. Thank you, counsel. You're welcome. We'll give you two minutes for rebuttal. Two. Thank you. The Perry case from the Supreme Court of Nevada did not address contractual claims at all. It tells us nothing about the applicable statute of limitations for the contract claims here. And as I said, under the 6-year statute, we've heard nothing to suggest that there's any basis to find less than $5 million in damages. Even as to the 2-year calculation, there was evidence that's from the Department of Labor website of what the records are of the number of certifications. It ranged from 173 herders certified to work in Nevada in 2014, 153 in 2015, 147 in 2016. What's your response to the argument that certifications do not equal Shepard's? There has to be evidence to support that, and there has been no evidence in the record. Do you have to have evidence that the certifications do equal Shepard's? Well, the certification is an assertion by WRA that it had work that needed to be done, that U.S. workers were not available to take on such work, and that, therefore, permission was needed to bring in a worker. So there's actually, you know, it's called a certification for a reason. There are certain facts that are being certified to the Department of Labor. So there's an inference that they were seeking up to 100 workers, but we don't know whether they hired them or not. That's the argument, as I understand it. Well, I want to say not up to 100. 173 was the remarks. 173, but we don't know how many of those, we don't know how many were actually hired. Well, there would be no reason to go through the certification. In fact, it would be, I think, lying to the Department of Labor to say we absolutely can't find U.S. workers for this work that needs to be done, and then the work didn't need to be done. It would be remarkable for an organization to, I mean, you know, that there might be one or two that didn't get used, but that there would be any significant number not used when that certification is being made to the Department of Labor is a remarkable supposition to make without any evidence from WRA and the record. I did also just want to get back to, Judge Akuta, your question about what the basis is that there was a contract, and I believe that the correct regulation is 20 CFR 665.122Q, that in the absence of any other written contract, the job order will be further, that if there is a written contract which does not include all of the required terms between both the employer and employee, that the regulations deem it to supplement that contract. Right. But here there is a written contract. But with one of the employers, and then there's not – That's all we have in the record, right? So is there anything that shows that any workers were working without a contract such that WRA's job order would be the contract? Yes, for everybody who is – because everybody who is working for WRA, the fact that they also had a contract with another co-employer does not mean that there's So this says a work contract supersedes any job order, but you're saying there's two contracts even when there's a work contract. You have – you don't – there's nothing in the regulations supporting that, though. Because each employer must have a contract with the employee, and the contract that El Tejan entered into cannot satisfy WRA's obligation. And as – and further, the contract in the record doesn't contain all the required terms, and the regulation I cited states that the regulations supplement and supplant that contract rather than the contract supplanting the regulations. Okay. Thank you, counsel. Thank you, Your Honor. The case to start will be submitted for decision. Thank you both for your arguments, and we'll be in recess for the morning. All rise. The court in this session is adjourned.
judges: Thomas, Ikuta, Molloy